IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

January 4, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| WAYNE ELDRED HILL, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | FILED: JANUARY 4, 1999 |
| v. | ) | |
| | ) | |
| CNA INSURANCE COMPANY | ) | KNOX COUNTY |
| | ) | |
| Defendant/Appellee | ) | |
| and | ) | HON. FREDERICK K. McDONALD |
| LARRY BRINTON, JR., DIRECTOR | ) | CHANCELLOR |
| OF THE DIVISION OF WORKERS' | ) | |
| COMPENSATION, TENNESSEE | ) | |
| DEPARTMENT OF LABOR, | ) | NO. 03-S-01-9608-CH-00086 |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

For Appellee Hill:

DAVID H. DUNAWAY
LaFollette, TN

For Appellee CNA Ins. Co.:

LINDA J. HAMILTON MOWLES
Knoxville, TN

For Appellant:

JOHN KNOX WALKUP
Attorney General and Reporter

DIANNE STAMEY DYCUS
Senior Counsel
Nashville, TN

O P I N I O N

AFFIRMED                                          BIRCH, J.

In this workers' compensation action, the trial court determined that Wayne Eldred Hill, the employee, was permanently and totally disabled. Pursuant to Tenn. Code Ann. § 50-6-208(a), the court apportioned 10 percent of the award to the employer and 90 percent of the award to the Second Injury Fund. The case was referred to the Special Workers' Compensation Appeals Panel for findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 50-6-225(e). The Appeals Panel modified the award by apportioning 65 percent to the employer and 35 percent to the Second Injury Fund pursuant to Tenn. Code Ann. § 50-6-208(b).

We granted CNA Insurance Company's[1] motion for full-court review to determine the correct apportionment under Tenn. Code Ann. § 50-6-208(a). After review of the entire record, we conclude that the trial court's apportionment of liability was correct and that it is consistent with this Court's decision in <u>Bomely v. Mid-America Corp.</u>, 970 S.W.2d 929 (Tenn. 1998).

The employee managed a convenience store owned by the employer. In January 1992, he sustained back and pelvic injuries in an automobile accident which occurred in the course and scope of his employment. For these injuries, he accepted a settlement award of 35 percent permanent partial disability. While recuperating,

---

[1]CNA Insurance Company is the employer's insurance carrier.

the employee suffered a non-work-related injury to his brain,[2] resulting in a 16 percent permanent anatomical impairment rating.

The employee returned to work in April 1993. Subsequently, in October 1993, he developed a work-related condition in his right upper arm which was diagnosed as carpal tunnel syndrome. The employee continued to work, and in January 1995, he underwent surgery to correct the carpal tunnel syndrome. He again returned to work, but in October 1995, he resigned because of psychological problems.

The trial court found that the employee was permanently and totally disabled as a result of the effects of the psychological problems he developed from a combination of his injuries. Considering the employee as if he had incurred no prior injuries, the trial court determined that he would have suffered a 10 percent permanent partial vocational disability from the physical and psychological effects of the carpal tunnel syndrome. Pursuant to Tenn. Code Ann. § 50-6-208(a),[3] the trial court thus apportioned 10 percent of the permanent and total disability award

---

[2]The non-work related injury, Hemangioma, is described as bleeding in the brain. It was considered a non-work-related injury because it was determined to be the result of a congenital condition.

[3]Subsection (a)(1) of Tenn. Code Ann. § 50-6-208 (Supp. 1997) provides in pertinent part: "If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled. . . ." (emphasis added).

3

to the employer to reflect this most recent injury. The remaining 90 percent of the award was apportioned to the Second Injury Fund. This 90 percent reflected the back and pelvic injuries, the hemangioma, and the psychological effects caused by a combination of these injuries.

On review, the Special Workers' Compensation Appeals Panel agreed that the employee was permanently and totally disabled as a result of the "emotional disability jointly caused by the hemangioma and the carpal tunnel syndrome." The panel held, however, that such permanent and total disability mandated the application of Tenn. Code Ann. § 50-6-208(b),[4] rather than § 50-6-208(a). Accordingly, the panel combined the employee's 100 percent current disability status with his prior court-approved workers' compensation settlement of 35 percent. Because the result exceeded 100 percent permanent disability, the panel apportioned the award at 35 percent liability to the Second Injury Fund (to reflect the amount that exceeded 100 percent) and the remaining 65 percent liability to the employer (to reflect a 100 percent disability award).

---

[4]Subsection (b)(1)(A) of Tenn. Code Ann. § 50-6-208 (Supp. 1997) provides: "In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards." (emphasis added).

4

As to findings of fact by the trial court, our review is *de novo* upon the record accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2)(Supp. 1997); <u>Jones v. Sterling Last Corp.</u>, 962 S.W.2d 469, 471 (Tenn. 1998).

The issue in this case is whether the trial court correctly apportioned the award between the employer and the Second Injury Fund under Tenn. Code Ann. § 50-6-208(a) rather than under Tenn. Code Ann. § 50-6-208(b). We recently addressed the apportionment of liability for subsequent injuries in <u>Bomely v. Mid-America Corp.</u>, 970 S.W.2d 929 (Tenn. 1998). In <u>Bomely</u>, we held that the Second Injury Fund is liable under subsection (a) if (1) the employee has previously sustained a permanent physical disability from any cause or origin, either compensable or noncompensable, and (2) the employee becomes permanently and totally disabled as the result of a subsequent compensable injury. <u>Id.</u> at 934. In such a case, the employer is responsible only for the disability that would have resulted from the subsequent injury had the earlier injury or injuries not existed. <u>Bomely</u>, 970 S.W.2d at 934. Consequently, the Second Injury Fund is liable for the remainder of the award.

In cases where Tenn. Code Ann. § 50-6-208(a) is applicable, "it is important for trial courts to make an explicit finding of fact regarding the extent of vocational disability attributable to the subsequent or last injury, without

5

consideration of any prior injuries." <u>Id.</u> The trial court made such an explicit finding in this case. Although the panel agreed with this finding, the panel nevertheless apportioned liability under Tenn. Code Ann. § 50-6-208(b). At the time this case was reviewed, however, the panel did not have the benefit of this Court's decision in <u>Bomely</u>.

We find that the facts before us satisfy the requirements of Tenn. Code Ann. § 50-6-208(a), and thus, we affirm the trial court's ruling. The employee had sustained injuries in 1992 from "any cause or origin," to wit: the employment-related automobile accident, which caused permanent disability; the employer had notice of the employee's preexisting conditions; and the employee subsequently became permanently and totally disabled as a result of the later compensable injury occurring in 1993. <u>See Bomely</u>, 970 S.W.2d at 937; <u>Love v. American Olean Tile Co.</u>, 970 S.W.2d 440, 443 (Tenn. 1998). The employer is therefore responsible only for the disability that would have resulted from the last injury as if the employee had suffered no previous permanent injuries.

The trial court correctly rated the employee's permanent vocational disability resulting from the last injury (carpal tunnel syndrome) without consideration of any prior injuries. The trial court found that this rating should be 10 percent.[5] The evidence does not preponderate against this finding.

---

[5]The record reveals that the trial court made an explicit finding that the 10 percent permanent partial disability rating assessed to the carpal tunnel syndrome included that portion of the employee's psychological problems attributable to this last injury.

6

Accordingly, we hold that the trial court correctly apportioned 10 percent of the permanent and total disability award to the employer to reflect the disability resulting from the last compensable injury. The remaining 90 percent of the award was correctly apportioned to the Second Injury Fund to reflect the employee's prior injuries. Furthermore, the trial court correctly determined that Tenn. Code Ann. § 50-6-208(b) does not apply because the employee does not have any prior awards for permanent disability to the body as a whole which, when coupled with the most recent award of 10 percent, equal or exceed 100 percent.[6]

For the foregoing reasons, the judgment of the trial court is affirmed. Costs are taxed to the Second Injury Fund.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Barker, J.

CONCURRING SEPARATELY:
Holder, J.

Drowota, J., not participating

---

[6]The combined awards in this case (35 percent and 10 percent) equal 45 percent.