**FILED**

**May 27, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:40 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| James Yarbrough | ) Docket No. 2015-08-0574 |
| | ) |
| v. | ) State File No. 48061-2015 |
| | ) |
| Protective Services Company, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Jim Umsted, Judge | ) |

---

### Affirmed in Part, Vacated in Part, and Remanded - Filed May 27, 2016

---

In this second interlocutory appeal of this case, the employee alleges suffering an injury to his shoulder after striking his shoulder on a cabinet. The parties dispute whether the employee provided timely notice of the injury and whether surgery recommended by an authorized treating physician is causally related to the work incident. Following an expedited hearing, the trial court found that the employee's injury was compensable and ordered medical benefits, including the recommended surgery, and temporary disability benefits. The employer has appealed. We affirm the trial court's decision to the extent it orders medical and temporary disability benefits, but vacate the trial court's finding regarding compensability of the claim. We also deny the employee's request that this appeal be deemed frivolous and that he be awarded sanctions in the form of attorneys' fees.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Catherine Dugan, Mt. Juliet, Tennessee, for the employer-appellant, Protective Services Company, Inc.

Andrew Clarke, Memphis, Tennessee, for the employee-appellee, James Yarbrough

**Factual and Procedural Background**

James Yarbrough ("Employee") was employed as a flooring installer by Protective Services Company, Inc. ("Employer"). On April 16, 2015, Employee was moving a stove into place after installing flooring when he stood up and struck his right shoulder on the bottom of a cabinet. Although he was able to finish his work for the day, he alleges the blow resulted in an injury to his shoulder and caused immediate pain. He maintains that he reported the incident to his supervisor, Parker Moore, on April 17, 2015, and that Mr. Moore assigned him less strenuous work. Employee sought treatment on his own on May 1, 2015. According to Employee, he reported the injury to Mr. Moore again on May 2, 2015, but was not offered a panel of physicians.

Employee testified that he worked fairly regularly from the date of the injury through mid-July 2015, although he asserts there were days shoulder pain prevented him from working. On those days, Employee testified that he contacted Mr. Moore to let him know he was unable to work due to his injury. He denied having any problem with his shoulder before striking the cabinet at work on April 16, 2015.

Mr. Moore disputed having been told about Employee's shoulder injury prior to late May or June 2015. According to Mr. Moore, Employee, on June 19, 2015, gave him medical bills associated with the May 1, 2015 treatment. At that time, Mr. Moore instructed Employee to report his injury to Leslie Hays, Employer's office manager. Upon being informed of the injury, Ms. Hays completed a first report of injury and provided Employee with a panel of physicians from which he chose Dr. Riley Jones, an orthopedic surgeon.

Employee first saw Dr. Jones on June 26, 2015, with complaints of shoulder pain as a result of hitting his shoulder on the cabinet. Dr. Jones diagnosed Employee with tendinitis and obtained x-rays, which revealed mild acromioclavicular changes. He administered a steroid injection and returned Employee to work with no restrictions. Employee returned to Dr. Jones with complaints consistent with those reported at his initial visit. Dr. Jones administered another steroid injection in Employee's shoulder and returned him to work.

Over the ensuing weeks, Employee continued to complain of pain in his shoulder and, on September 4, 2015, Dr. Jones ordered an MRI and took him off work. The MRI showed no evidence of a rotator cuff tear, but did reveal "narrowing of the subacromial space with impression [in] the supraspinatus musculotendinous junction by degenerative changes of the acromioclavicular joint." Dr. Jones recommended surgery and continued Employee's restriction from work. Employer declined to authorize the surgery based upon its belief that it was not causally related to the incident on April 16, 2015.

2

Employee returned to Dr. Jones on October 19, 2015, and Dr. Jones continued to keep him off work. Dr. Jones opined that the "injury arose primarily out of and in the course and scope of employment. The diagnosis is consistent with the mechanism of injury. The employment contributed more than 50.1% in causing the injury considering all causes." He went on to clarify that Employee "probably did have some pre-existing problems," but "when he injured the shoulder he primarily injured the acromioclavicular joint and also caused an impingement causing pain in the biceps tendon. If he had not had this injury, then he would not have had any problems. Based on my best medical judgment this is greater than 50.1% related to his on-the-job injury." In response to an inquiry from Employer, Dr. Jones indicated the injury arose primarily out of the employment and was the result of "[d]irect trauma to [r]ight AC joint—[c]ontinued pain [and] popping."

Thereafter, Dr. Jones was deposed and articulated medical opinions regarding causation consistent with those in his records. Specifically, he testified as follows:

A: Well, what it is is he's got some degenerative changes in his acromioclavicular joint and when he hit this thing it aggravated it and started a process of swelling in that area and, as it says, there's an indention on the rotator cuff. He didn't tear the rotator cuff, but there's an indentation, so that is what gives you this impingement that you're talking about and it continues to give him his pain, plus it irritated the joint itself, which was arthritic. I'm sure there was some pre-existing arthritis in there, but he hadn't had any problems with that, and the direct blow, that's how you separate shoulders. . . . He didn't have any real tears, but that's where the irritation started.

Q: And there was some type of indentation that was caused by the trauma?

A: That was secondary to the swelling of the acromioclavicular joint.

Q: But these are actual–

A: These are objective findings.

Q: Objective findings of a change in his shoulder as a result from a blow, correct?

A: That's correct.

Employer obtained a causation opinion from Dr. Claiborne Christian, also an orthopedic surgeon. Dr. Christian did not examine Employee but reviewed the medical

3

records associated with Employee's treatment, including the deposition of Dr. Jones. He acknowledged Dr. Jones' opinion that Employee would not have needed surgery if he had not sustained the blow to his shoulder. However, he opined that the employment was not the primary cause of the need for surgery, observing that patients with degenerative shoulder conditions often need surgery without having suffered trauma and that the pre-existing bone spurs in Employee's shoulder were the primary cause of the need for surgery. He acknowledged Employee's work-related condition was a contusion to the shoulder that "probably resulted in some irritation to his rotator cuff." He also acknowledged that suffering trauma to a joint can accelerate the need for surgery in a patient with a degenerative condition.

Employee filed a petition for benefit determination and a request for an expedited hearing asking the trial court to render a decision based upon a review of the record. Employer responded by filing a motion for an evidentiary hearing, which the trial court granted. Employee appealed that ruling and, on January 25, 2016, we affirmed the trial court's decision to hold a hearing. Following the hearing, the trial court determined Employee had provided timely notice of his injury and that his shoulder injury was compensable. Accordingly, the court ordered Employer to provide the recommended surgery and to pay temporary disability benefits beginning September 4, 2015. Employer has appealed.

**Standard of Review**

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

4

**Analysis**

Employer argues the evidence does not support the trial court's finding that notice was timely provided, and that evidence of causation is insufficient to support the award of medical benefits. The trial court's award of temporary disability benefits has not been challenged.

Employee responds that the trial court's decision is supported by the evidence and requests that the appeal be deemed frivolous, that bad faith penalties be assessed for Employer's failure to timely provide benefits, and that Employer be estopped from relying on notice as a defense due to its failure to include that defense in its Notice of Controversy. Employee also requests bad faith penalties in the amount of 25% of unpaid temporary disability benefits, discretionary costs, and attorneys' fees based upon an hourly rate as contained in an affidavit he filed in the trial court.

*Notice*

The Workers' Compensation Law mandates that "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." Tenn. Code Ann. § 50-6-201(a)(1) (2015). The statute additionally provides that "[n]o compensation shall be payable . . . unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id.* The notice requirement contained in section 50-6-201 "exists so that the employer will have the opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Jones v. Sterling Last Corp.*, 962 S.W.2d 469, 471 (Tenn. 1998). Consequently, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law." *Bogus v. Manpower Temp. Serv.*, 823 S.W.2d 544, 546 (Tenn. 1992).

Here, Employee testified that he told his supervisor, Mr. Moore, about his injury the day after it occurred and that Employer provided less strenuous work when his shoulder was giving him difficulty. Mr. Moore, on the other hand, disputed being told of the injury prior to late May or June 2015. The trial court believed Employee, noting that he was a "reasonable, honest and credible witness." The law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). While the

5

evidence on the point is conflicting, there is insufficient proof to disturb the trial court's finding that notice was timely provided to Employer.[1]

*Causation*

An injured worker may be granted medical or temporary disability benefits prior to trial when he or she presents sufficient evidence to enable the trial court to conclude that the worker would likely prevail at a trial on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2015). Unlike an expedited hearing, at a compensation hearing where the parties have arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). In this case, rather than finding that the evidence was sufficient to commence benefits pending a trial, the trial court concluded that Employee's injury was compensable, a finding that presumes Employee proved each element of his case by a preponderance of the evidence. To the extent the trial court found Employee's claim compensable, that finding is premature and, as such, is vacated.

Nevertheless, we find that the record supports the trial court's determination that Employee is entitled to medical benefits at this point in the case, not because he has proven the injury is compensable by a preponderance of the evidence, but because he presented sufficient evidence to enable the trial court to conclude he would likely prevail at trial. *See* Tenn. Code Ann. § 50-6-239(d)(1). Dr. Jones, the authorized treating physician, opined that when Employee struck his shoulder on the cabinet, he began a process of inflammation and aggravation that requires surgical intervention and is primarily caused by the employment. Dr. Jones testified that the history given to him was "consistent with this type of injury and this type of problem." After reviewing his previously expressed opinion that the need for surgery was primarily caused by the employment, Dr. Jones stated:

> Q:    And that's been your opinion throughout and expressed to the insurance company, correct?
>
> A:    As clearly as I can make it.
>
> Q:    Is there any doubt in your mind that this is the surgery that you think is required that's related to the work related injury that was described to you?

---

[1] In light of our finding that notice was timely provided, we need not resolve Employee's contention that Employer should be estopped from raising notice as a defense because it was not referenced in the Notice of Controversy. We do note, however, that Employee cites no authority to suggest that an employer must list every known or suspected defense in such a document.

6

A:     Greater than 50.1 percent.

Dr. Jones acknowledged on cross-examination that patients could present with the same MRI findings and complaints as Employee, and he would recommend the same course of treatment, even in the absence of trauma.  However, on re-direct examination, Dr. Jones reiterated his opinion that, based on Employee's history, his course of treatment, and the objective findings in the shoulder, the recommended surgery was necessitated primarily by the work-related injury and not the pre-existing degenerative condition.

As the trial court observed, the opinion expressed by Dr. Jones is entitled to a presumption of correctness.  *See* Tenn. Code Ann. § 50-6-102(13)(E) (2015).  The trial court ruled that while Dr. Christian, who never treated or examined Employee, offered a contrary view, his opinion was insufficient to rebut the statutory presumption of correctness.  Based upon our review of the record, it cannot be said that the evidence preponderates against this finding.  Accordingly, the trial court's award of medical benefits is affirmed.

*Frivolous Appeal, Penalties, and Attorneys' Fees*

Employee requests that he be awarded bad faith penalties for Employer's failure to timely provide benefits, discretionary costs, and attorneys' fees.  Although these issues were raised in the trial court before, during, and after the expedited hearing, the trial court did not address them in its decision but, instead, set a hearing to consider them.  With limited exceptions not applicable here, our review is limited to issues adjudicated by the trial court.  *See Grant v. Commer. Appeal*, No. W2015-00208-COA-R3-CV, 2015 Tenn. App. LEXIS 750, at *24 (Tenn. Ct. App. Sept. 18, 2015).  Thus, although Employee has asked that we address these issues, we decline to do so until the trial court has resolved them.

Employee also asks that we find Employer's appeal to be frivolous and that sanctions be awarded in the form of attorneys' fees.  As we noted in the prior appeal of this case, a frivolous appeal is one that is devoid of merit or brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016).  "[P]arties should not be required to endure the hassle and expense of baseless litigation.  Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success."  *Id.* at *10-11 (citation omitted); *see also* Tenn. Code Ann. § 27-1-122 ("When it appears to any reviewing court that the appeal . . . was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the

7

appeal."); Tenn. Code Ann. § 50-6-225(d)-(e) ("When a reviewing court determines . . . that the appeal . . . is frivolous, a penalty may be assessed by the court, without remand, against the appellant for a liquidated amount."); Tenn. Comp. R. & Regs. 0800-02-22-.04(6) (2015) ("When it appears to the appeals board that an appeal was frivolous or taken solely for delay, the appeals board may, either upon motion of a party or of its own motion, award expenses, including reasonable attorney's fees, incurred by the appellee as a result of the appeal.").

While Employer did not succeed in this appeal, the appeal is not devoid of merit, and there is no evidence that it was brought solely for delay. As discussed above, the evidence was conflicting on several key points, presenting legitimate issues for our review. Indeed, the appeal resulted in one of the trial court's findings being vacated. Thus, we decline to find the appeal frivolous.

## Conclusion

The trial court's decision directing Employer to provide medical and temporary disability benefits is affirmed. The trial court's determination that Employee's claim is compensable is vacated as premature. The case is remanded for any further proceedings that may be necessary.

_____
Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

8

**FILED**

**May 27, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:40 A.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| James Yarbrough | ) | Docket No. 2015-08-0574 |
| | ) | |
| v. | ) | |
| | ) | State File No. 48061-2015 |
| Protective Services Co., Inc., et al. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 27th day of May, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Andrew C. Clark** | | | | | X | aclarke@accfirm.com |
| **Catherine C. Dugan** | | | | | X | catherine.dugan@petersonwhite.com |
| **Jim Umsted, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov